IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID A. FIELD,

      Plaintiff,

v.

                                              Civil Action No.

SHEET METAL WORKERS NATIONAL
PENSION FUND,

      Defendant.

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

This is an ERISA claim to recover disability pension benefits against a pension Plan administered by the Sheet Metal Workers' National Pension Fund and to recover attorney's fees and costs allowed under the ERISA statute.

Plaintiff, David Field, makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay disability (LTD) benefits due under an ERISA employee benefit plans, and for Defendant's other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

## PARTIES

1.      Plaintiff, David Field, (hereinafter "Plaintiff"), is currently and was at all relevant times, a resident of Plymouth County, Massachusetts.

2.      Defendant Sheet Metal Workers National Pension Fund (hereinafter "The Fund") is a multiemployer defined benefit Pension Fund for the benefit of members of the Sheet Metal, Air, Rail, and Transportation Workers' Union ("SMART"), and may be served through The

Board of Trustees, Sheet Metal Workers' National Pension Fund, 8403 Arlington Blvd., Suite 300 Fairfax, VA 22031.

3.     Defendant Sheet Metal Workers National Pension Fund, THROUGH ITS Board of Trustees and its delegate committees, is the party obligated to pay benefits and to determine eligibility for benefits under the Sheet Metal Workers National Pension Fund Plan ("the Plan").

## JURISDICTION AND VENUE

4.     This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)).  Plaintiff's claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 *et seq*. and the subject Benefit Plan constitutes "plan[s] under ERISA."

5.     The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials.  In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

6.     Venue is proper within the District of Massachusetts pursuant to 29 U.S.C. § 1132(e)(2) because Mr. Field is domiciled in Massachusetts.

## FACTS COMMON TO ALL COUNTS

7.     Plaintiff has been a member by of SMART Local Union 17, in Dorchester, Massachussetts since 1981.

8.     By virtue of his membership in the Union, Plaintiff was enrolled in the Plan.

9.     Union members became eligible for disability pension benefits by earning at least 10 years of Pension Credit.

10.     Employers subject to collective bargaining agreements make contributions to the fund for hours of service and those hours are credited to union members' accounts.

11.     Benefits under the Plan are paid by the Fund.

12.     Plaintiff is a participant or beneficiary of the Plan.

13.     Plaintiff ceased work due to a disability related to his medical conditions, including two herniated discs, injuries from electrocution, and Crohn's disease, on July 17, 1991, while covered under the Plan.

14.     Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

15.     Plaintiff was notified that the Social Security Administration was awarding him disability benefits on March 2, 1992, for his disability dating to August 1991.

16.     Plaintiff filed an application for a disability pension benefit under the Plan on June 21, 1993.

17.     The Fund denied Plaintiff's application by letter dated July 29, 1993 claiming he was not vested because he did not have enough hours of service.

18.     Plaintiff appealed the Fund's denial by letter on September 8, 1993, stating that Plaintiff believed hours had not been reported for him.

19.     By letter on Novemebr 17, 1993, the Fund again denied Plaintiff's claim.

20.     Field Fabrication submitted additional payments for hours worked and submitted hours on Plaintiff's behalf to Fund on March 10, 1994 and the Fund accepted the payments and credited the hours to Plaintiff.

21.     Field Fabrication again submitted payments for past hours worked and submitted records of hours on Plaintiff's behalf on January 20, 1995, and the Fund accepted the payments and credited the hours to Plaintiff's account.

22.     SMART Local 17 sent a letter to the Fund in January of 1995 clarifying certain Accident & Sickness hours on Plaintiff's behalf, which the Fund agreed should be accepted because they would have been credited to plaintiff under the Local's prior Fund.

23.     Fund records show that Plaintiff was considered vested and eligible for benefits as of February of 1995.

24.     The Fund approved Plaintiff's second application for disability pension benefits filed on January 31, 1995 on February 7, 1995.

25.     The Fund paid a defined benefit of $676/month from the effective date of February 1, 1995 until July 11, 2019.

26.     The Trust Document for the Fund provides that "All determinations and decisions of the Trustees and/or Committee of the Trustees regarding Benefits, whether made in their fiduciary or plan sponsor capacities, are final and biding upon all persons, including but not limited to any participant or beneficiary, the Union, and any Employer and any and all persons or entities claimant through these persons of entities."

27.     The Plan document at Section 8.03 states that "the Trustees shall have the sole and absolute power, authority, and discretion to determine: (3) entitlement to or amount of a pension; (5) the crediting of Future or Past Service Credit and/or Contribution Hours; and (6) the crediting of Hours of Work and Years of Service. (b) the decisions of the Trustees or any delegate of the Trustees with respect to any of the foregoing shall be final and binding…"

28.     Beginning in the early 2000s, the Plan conducted multiple investigations, seeking to terminate Plaintiff's eligibility for his disability pension.

29.     The Fund notified Plaintiff via letter in 2003 and 2004 that it was conducting a verification of his eligibility, and requested additional information including Social Security records.

30.     Plaintiff complied with all requests, including submitting Social Security Records from 2003 forward and, after concluding its investigation, the Fund continued to find him eligible and pay his benefits.

31.     The Fund notified the Plaintiff in 2011 that it was investigating whether Plaintiff had been involved in disqualifying employment; again, after its investigation, the Fund continued to find him eligible and continued his benefits.

32.     The fund notified Plaintiff in 2014 that it was again investigating whether Plaintiff had been involved in disqualifying employment.

33.     Fund records show that no projects were found to be completed under Plaintiff's master sheet metal licenses as of 2014, and the Fund again continued to find him eligible and continued his benefits.

34.     By letter dated July 11, 2019, The Fund terminated Plaintiff's disability claim, stating as justification that it believed he had engaged in "disqualifying employment" as defined in the plan including work performed by "David Field Construction" in 2008 and 2010 and work performed in 2016.

35.     Plaintiff appealed the termination of his benefits by letter dated July 15, 2019, supporting the appeal by providing evidence that he had not performed any of the work identified by the Fund, including information verifying that a different David Field performed

the work in 2008 and 2010 and providing a sworn declaration from Juan Quishpilema, who

performed the work in 2016 that listed Plaintiff's license, where Mr. Quishpilema admited that

he obtained Mr. Field's license number and used it without Mr. Field's knowledge or consent.

36.     By letter on September 16, 2019 the Fund sought additional information including

information related to Florida construction licenses in the name of David Field, and employment

and tax records from as far back as 1982.

37.     By letter dated Septemeber 20, 2019 the Plaintiff responded to the Fund, stating

that the Fund had access to Plaintiff's social security records as requested, the records from 1982

would be impossible for him to obtain after so much time, and reiterating his prior appeal.

38.     On October 31, 2019, the Fund sent Mr. Field a letter agreeing that the work it

had previously identified in 2008 and 2010 had been performed by a different David Field, but

again requested information as to the work done in 2016 and requested information regarding

two new possible disqualifying employment incidents, including work performed on Plaintiff's

home that resulted in litigation with the Town of Whitman and holding construction licenses in

Florida.

39.     By letter dated November 14, 2019, the Fund admitted that the licensee in Florida

had not been Plaintiff's license, requested more information with regard to the work done in

2016, and more information regarding Mr. Field's sheet metal licenses.

40.     By letter dated April 1, 2020,  Plaintiff again appealed his claim, reiterating that

the Fund already had all the relevant records that could be obtained and that Mr. Quishpilema

had performed work under his license without his knowledge or permission, but Plaintiff had not

performed any work or authorized any work to be performed and Plaintiff could not provide any

other contact information for Mr. Quishpilema.

41.     In investigating Plaintiff's appeal, the Plan did not communicate with Mr. Quishpilema, and its only attempt to do so was to send a single letter to him with no apparent follow-up.

42.     The plan also failed to gather any other evidence regarding the use of Plaintiff's sheet metal license.

43.      Fund records show that rather than make additional attempts to contact Mr. Quishpilema to corroborate his sworn statement or gather other evidence, the Fund continued to seek additional reasons to terminate Plaintiff's benefits by conducting investigations into occupational licenses held by anyone named David Field.

44.     By letter dated April 11, 2020, the Fund denied Plaintiff's claim on the grounds that Plaintiff had engaged in disqualifying employment in 2016, and alternatively, that Plaintifff had never been eligible for benefits in the first place, disregarding Mr. Quishpilema's sworn statement and the Fund's own final, binding, eligibility decision from 1995.

45.     The Fund failed to justify its rejection of Mr. Quishpilema's sworn statement with anything other than the Trustees' "knowledge of the industry" and alleged Plaintiff owed the Fund an overpayment in the amount of $33,809 for his benefits dating back to Mr. Quishpilema's unauthorized use of Plaintiff's license.

46.     The Fund alleged that Plaintiff was ineligible due to his inability to produce – in 2019 and 2020- further Social Security or other employment records from Field Fabrication, a now defunct company, dating back to the 1980s which would substantiate his vested status, ignoring the Fund's own decision and evidence from its original determination in 1995.

47.     Plaintiff has exhausted his administrative remedies under the Plan.

48.     The Fund would pay any benefits due out of its own funds.

49.     The Fund owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

50.     The Fund was under a perpetual conflict of interest because the benefits would have been paid out of its own funds.

51.     The Fund allowed its concern over its own funds to influence its decision-making.

52.     The Fund breached its fiduciary duties to Plaintiff, including the duty of loyalty.

## FIRST CAUSE OF ACTION
## FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein and says further that:

53.     Under the terms of the Plan, Defendant agreed to provide Plaintiff with disability pension benefits in the event that Plaintiff became disabled as defined by the Plan.

54.     Plaintiff is disabled and entitled to benefits under the terms of the Plan because he was vested in pension.

55.     Defendant found Plaintiff to be vested as of February 1995 and that decision was final and binding under the terms of the Plan.

56.     Defendant failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

57.     The decisions to deny benefits were wrong under the terms of the Plan.

58.     The decisions to deny benefits and decision-making processes were arbitrary and capricious when the Trust Document and Plan Document state that decisions regarding benefits are final and binding, and the Fund had accepted Mr. Field's vested status since 1995.

59.     The decisions to deny benefits were influenced by the Defendant's financial conflict of interest.

60.     The decisions to deny benefits were not supported by substantial evidence in the record.

61.     The decisions to deny benefits were the result of a biased and unreasonable investigation.

62.     As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled to under the Plan.

63.     As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff requests that this Court grant him the following relief in this case:

**On Plaintiff's First Cause of Action:**

1.     A finding in favor of Plaintiff against the Defendant;

2.     Damages in the amount equal to the disability income benefits to which he was entitled through the date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3.     Prejudgment and postjudgment interest;

4.     An Order requiring the Plan or appropriate Plan fiduciaries to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan, as well as any other collateral benefits to which he might be entitled on the basis of being disabled under the LTD plan.

5.     Plaintiff's reasonable attorney fees and costs; and

6.     Such other relief as this court deems just and proper.

Dated: October 28, 2020

Respectfully submitted,


BY:     s/*M. Katherine Sullivan*
        M. Katherine Sullivan, BBO No. 649239
        Law Office of Katherine Sullivan, LLC
        945 Concord Street
        Framingham, MA 01701
        (508)620-5387
        Email: kate@sullivandisabilitylaw.com


ERIC BUCHANAN & ASSOCIATES, PLLC

BY:     */s Hudson T. Ellis*
        Hudson T. Ellis (Tenn. Bar #28330)
        414 McCallie Avenue
        Chattanooga, TN 37402
        (423) 634-2506
        FAX:  (423) 634-2505
        Email:ellish@buchanandisability.com
        *Motion for Admission Pro hac*
        *filed contemporaneously*